Filed 11/16/15  P. v. Hernandez CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FIDENCIO HERNANDEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B259787<br>(Super. Ct. No. 2013036407)<br>(Ventura County) |

Fidencio Hernandez appeals a victim restitution order (Pen. Code, § 1202.4, subd. (f)(3)(F))[1] following a judgment after his guilty plea to two felony counts of lewd acts upon a child under the age of 14 (§ 288, subd. (a)) and one felony count of unlawful sexual intercourse (§ 261.5, subd. (d)).  Hernandez was sentenced to an aggregate term of six years in prison and ordered to pay victim restitution.  We conclude, among other things, that the trial court did not abuse its discretion by awarding $25,000 as noneconomic damages for victim restitution.  We affirm.

FACTS AND PROCEDURAL HISTORY

In 2011, Hernandez sexually molested A.L., an eight-year-old girl living in his home.  He sexually assaulted her when she was taking a shower.  A.L. said Hernandez "rubbed his penis, up and down, 'in the middle' on her butt."  He told her "not to say anything to anyone."  A.L. did not tell others what he did because "she was 'afraid' he

---

[1] All statutory references are to the Penal Code.

would be mad at her."  He molested her in 15 separate incidents.  Each one occurred while she was in the shower and "her mother was at work."  In 2013, Hernandez had sexual intercourse with B.M., a 14-year-old girl.

After Hernandez's guilty plea and a sentencing hearing, the trial court held a victim restitution hearing.  It awarded noneconomic damages of $25,000 as victim restitution for A.L.

DISCUSSION

*The Victim Restitution Order*

Hernandez contends the trial court abused its discretion by ordering $25,000 as noneconomic damages as victim restitution.  He claims the order is so arbitrary and speculative it cannot satisfy due process standards.  We disagree.

"We review the amount ordered for restitution using the abuse of discretion standard."  (*People v. Smith* (2011) 198 Cal.App.4th 415, 435.)  Noneconomic damages are awarded as restitution to child victims for "felony violations of Section 288."  (*Id.* at p. 431.)

"Noneconomic damages are '*subjective*, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation.'" (*People v. Smith*, *supra*, 198 Cal.App.4th at p. 431, italics added.)  "'No fixed standard exists for deciding the amount'" of these damages.  (*Id.* at p. 436.)  "Unlike restitution for economic loss, . . . loss for noneconomic loss is subjectively quantified."  (*Ibid.*)  Trial courts "[search] for some way to quantify [the victim's] pain and suffering."  (*Id.* at p. 437.)  The court uses a standard similar to what a jury in a civil case applies "concerning noneconomic loss."  (*Id.* at p. 436.)  Consequently, great discretion is vested in the trial court's judgment on such restitution orders.  (*Ibid.*)

Appellate courts will "affirm a restitution order for noneconomic damages that does not, at first blush, shock the conscience or suggest passion, prejudice or corruption on the part of the trial court."  (*People v. Smith*, *supra*, 198 Cal.App.4th at p. 436.)

2

In *Smith*, the trial court ordered noneconomic restitution in the amount of $750,000. The Court of Appeal said the trial court based the award "on 15 years of abuse by defendant." (*People v. Smith*, *supra*, 198 Cal.App.4th at p. 437.) It said, "Multiplying that 15 years by $50,000, the court arrived at the figure requested by Doe--$750,000 for noneconomic damages." (*Ibid.*) The Court of Appeal affirmed. It held the total amount as noneconomic damages did not "shock the conscience." (*Id.* at p. 436.)

Hernandez argues *Smith* is distinguishable because in that case there was evidence of "immense suffering" by the victim. He claims here, by contrast, there is only "speculation by the court and the district attorney that section 288, subdivision (a) convictions *automatically* result in noneconomic loss." (Italics added.) We disagree.

The trial court noted that in deciding noneconomic loss it had considered several factors including, the "nature of the sexual offense," the "multiple times it occurred," the "age of the victim," and the amount the People sought for restitution. It said it considered the facts in the probation report. In their trial court brief in support of imposition of restitution, the People noted special factors supporting their request for a $25,000 restitution order. They highlighted the current impact of the crimes on A.L. They noted A.L.'s "victim impact statements" show she "*now* has difficulty '[trusting] certain people' and does not '*trust anyone*.'" (Italics added.) Additionally, A.L. indicated that "she has had *a hard time getting through this* 'without crying or *depression*.'" (Italics added.) She made these statements in 2014, responding to a question about the "continuing problems" she experienced involving the "emotional/physical impact" of Hernandez's 2011 offenses. Consequently, the court could reasonably infer her emotional problems were longstanding and continuing. A.L.'s statements support a finding of pain, suffering and psychological or emotional damage.

There were other facts supporting the noneconomic restitution award. Hernandez pled guilty to two "acts of molestation," but A.L. said he "molested her . . . 15 times." The acts involved the most aggravated form of lewd conduct. The probation report reflects these sexual assaults happened when A.L. was most vulnerable. The crimes were committed by someone she knew, a person who lived in her home, and who

3

was "trusted" by her mother.  They occurred when she "was in the shower and while her mother was at work."  When A.L. disclosed what Hernandez did, her mother told her, "Let's not tell anybody this."

A.L. was interviewed by law enforcement officers in 2012 and 2013.  In 2013, she was able to remember explicit details of the molestations.  The probation officer asked her "why she had not remembered some of the details that she currently provided during the interview in 2012."  A.L. responded that she "chose to forget about it."  Two adults in her home--Hernandez and A.L.'s mother--pressured her not to reveal what Hernandez did.  The trial court could reasonably infer the facts showed the causal connection between Hernandez's crimes and the source of A.L.'s depression and her current inability to trust other people.  (*People v. Austin* (1980) 111 Cal.App.3d 110, 115 ["The harm may be manifested in many different mental, emotional and physical ways, leaving a child with possible lasting and debilitating fears"].)

The prosecutor correctly noted that "[i]t is difficult to place a dollar amount on this type of loss, as no monetary compensation can ever rectify the psychological damage [A.L.] suffered in this case."  It is well recognized that "'child sexual abuse results in long-term emotional and psychological damage to the child victim if left untreated.'"  (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1315, fn. 6.)  "Significant harm may occur to a child who is caused to engage in or submit to the lustful intendments of a person seeking sexual self-gratification."  (*People v. Austin*, *supra*, 111 Cal.App.3d at p. 114.)  "Child molestation is not the kind of act that results in emotional and psychological harm only occasionally."  (*J.C. Penny Casualty Ins. Co. v. M.K.* (1991) 52 Cal.3d 1009, 1026.)  The prosecutor said the amount requested is "$12,500 for each of the two charged acts of molestation."  The amount is not disproportionate given the aggravated nature of the crimes, the impact on the child and the size of the amounts awarded in other noneconomic damage cases.  (*Hope v. California Youth Authority* (2005) 134 Cal.App.4th 577 [$1 million noneconomic damages for sexual orientation harassment]; *Ortega v. Pajaro Valley Unified School Dist.* (1998) 64 Cal.App.4th 1023,

4

1033, 1061 [$1.5 million noneconomic damages against a school district after a teacher touched the "breast or bra" of a student].)

Moreover, the trial court was most familiar with the facts of this case. It indicated the amount the People requested was relatively low. The court said, "[H]ad the prosecution asked for more, I probably would have awarded more."

The judgment is affirmed.

NOT TO BE PUBLISHED.

                                    GILBERT, P. J.
We concur:


            YEGAN, J.


            PERREN, J.

5

David M. Hirsch, Judge

Superior Court County of Ventura

_____

Stephen P. Lipson, Public Defender, William Quest, Senior Deputy Public Defender, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Nima Razfar, Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.